UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GREGORY A. FIGEL,

                Plaintiff,

                                  Case No. 1:23-cv-291

v.

                                  Honorable Sally J. Berens

JOHN DAVIDS et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff was denied leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) (ECF No. 5 and 6); however, he subsequently paid the entire filing fee on April 13, 2023. The case was then referred to the Pro Se Prisoner Civil Rights Litigation Early Mediation Program but failed to settle in mediation (ECF No. 16). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.28.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a

defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's procedural and substantive due process claims and his conspiracy claim against Defendants Williams and Barber. Plaintiff's First Amendment retaliation and state law claims against Defendants Williams and Barber will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Defendants ICF Warden John Davids, ICF Deputy Warden Lynn Sandborn, ICF Assistant Deputy Warden Charles Traylor, ICF Inspector/Assistant Deputy Warden Steven Barber, ICF Resident Unit Manager Brooke Oversmith, Correctional Facilities Administration (CFA) Inspector Chad Williams, CFA Supervisor Melissa Sandborn, CFA Supervisor Laura Heinritz, CFA Assistant Deputy Warden Robert Naple, and MDOC Director Heidi Washington in their official and individual capacities.

Plaintiff alleges that on May 8, 2019, his cellmate at the Carson City Correctional Facility died of a drug overdose. On May 10, 2019, Plaintiff was transferred to administrative segregation at ICF and a homicide investigation was begun by the Michigan State Police. The investigation ended on January 30, 2020, and the Montcalm County prosecutor declined to press charges against Plaintiff. However, Defendants Oversmith, Barber, Williams, Traylor, Lynn Sandborn, Davids, Naple, and Washington falsely asserted that the investigation did not end until October 26, 2020, and Plaintiff was not released to the general population until that date. On March 16, 2022, Plaintiff received verification from the ICF Hearing Investigator that the investigation ended on January 30, 2020.

On November 16, 2020, Defendant Lynn Sandborn stated that Plaintiff would have to start at ICF level 5 and work his way back to level 2. Plaintiff filed a complaint objecting to this determination, and on December 4, 2020, Defendant Melissa Sandborn reviewed the case and

4

listed Plaintiff's true security level as a level 2. Officials at ICF were instructed to place Plaintiff in level 2 housing as soon as a bed became available.

In April of 2021, Plaintiff began to file complaints regarding the failure to place him in level 2 housing. After Plaintiff filed several complaints on Defendants Oversmith, Barber, Williams, Traylor, Lynn Sandborn, Melissa Sandborn, and Davids, "they threatened to increase his true security level from a two to a four." (ECF No. 1, PageID.9.) Plaintiff then filed complaints about that as well. On July 4, 2021, Plaintiff filed a grievance against Defendants Traylor and Davids for refusing to place him in level 2. "In the grievance, the Defendants falsely claimed the MDOC was not allowing routine transfers because of the COVID pandemic," but Plaintiff states that other prisoners were being transferred in and out of ICF during this time. (*Id.*, PageID.10 (capitalization corrected).). The grievance response states:

> Prisoner Figel was sent to ICF 5/10/2019, for the suspected murder of his cellmate. The incident was formally investigated by the Michigan State Police. At the conclusion of the State Police's investigation, criminal charges were filed with the local Prosecutor's Office. For various reasons, including prisoner Figel serving a "Life" sentence, the Prosecutor did not pursue the recommended charges. Prisoner Figel's CSJ-481 security level does indicate he is potentially a level II[,] however, his actual placement required level V placement related to the MSP investigation. The waiver language indicates lack of bed space. The MDOC is currently not allowing routine transfers to occur, related to the Pandemic.

(ECF No. 1-20, PageID.83.)

On November 5, 2021, Plaintiff "sent a complaint to the legislative corrections ombudsman about the defendants refusing to return him to a level 2 as ordered by Melissa Sanborn from CFA." (ECF No. 1, PageID.10.) On November 17, 2021, non-party investigator Mattson came to ICF and interviewed Plaintiff. (*Id.*) Plaintiff states that Mattson told Plaintiff the meeting would be confidential, however, Plaintiff states that they met in a room "directly across" from the control center. (*Id.*)

On November 23, 2021, Defendant Williams wrote a homicide misconduct on Plaintiff for the exact same charges that had been dropped by the prosecutor in January of 2020. Plaintiff states that Defendant Barber had threatened to write such a misconduct on Plaintiff twice prior to it actually being written, and that Defendant Barber specifically told Plaintiff that he would receive this misconduct if he did not stop filing complaints on the Defendants about the refusal to reduce his custody level.

On February 22, 2022, non-party Hearings Officer S. Morris dismissed the misconduct charge, noting that the delay in writing the misconduct caused material and substantial prejudice to Plaintiff. (ECF No. 1-27, PageID.126.) Hearings Officer Morris also noted that no strangulation device was recovered, that the fentanyl levels of Plaintiff's cellmate were troubling, and that the toxicology report showed a level greater than that which should be fatal. Thus, Hearings Officer Morris noted that, based on the evidence presented to him at the hearing, even if the hearing proceeded on the merits, the finding would likely not be a guilty finding. (*Id.*, PageID.127.)

Plaintiff filed grievances and notices of impending litigation on Defendants Oversmith, Barber, Williams, Lynn Sandborn, Melissa Sandborn, Davids, Washington, and Naple in January and February of 2022. On March 8, 2022, Defendants Heinritz and Traylor changed Plaintiff's true security level to a level 5 and placed special designations on his classification without a hearing or written notice. Plaintiff filed a grievance regarding this on March 9, 2022, asserting that the action was retaliatory. Plaintiff filed a grievance on Defendant Washington on March 22, 2022, after he received information from an ICF hearing investigator showing that Defendant Washington instructed Defendant Williams to write the homicide misconduct on Plaintiff.

Plaintiff asserts that all the actions taken by Defendants were motivated by a desire to retaliate against him because of his grievances and complaints in violation of the First Amendment.

Plaintiff also claims that his Fourteenth Amendment procedural and substantive due process rights were violated by the misconduct, the ten months in segregation, and the change in his security level. Finally, Plaintiff claims that Defendants violated his rights under state law. Plaintiff's allegations also suggest that he believes that Defendants engaged in a civil conspiracy under Section 1983. Plaintiff seeks damages and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.      Procedural Due Process

Plaintiff claims that Defendants violated his right to procedural due process when they subjected him to a homicide misconduct, kept him in segregation for ten months, and kept Plaintiff in a higher security level unit and ultimately increased his security classification.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

### 1.      Major Misconduct for Homicide

Plaintiff claims that the major misconduct charge for homicide, written more than two years after the Michigan State Police investigation was completed and the state prosecutor dropped the charges, violated his procedural due process rights.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all

prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[3] a misconduct citation in the Michigan

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5). Plaintiff is serving a life sentence for crimes committed on September 2, 1991, and December 7, 1991. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=179188.

[3] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

prison system does not affect a prisoner's constitutionally protected liberty interests because it does not necessarily affect the length of confinement. *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 17591 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

Furthermore, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he received all the process due to him. In *Wolff*, 418 U.S. 539, the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.* at 563–69. Plaintiff received a hearing on the misconduct charge and, as noted above, the charge was dismissed by the Hearings Officer. Therefore, Plaintiff's procedural due process claim as it relates to the misconduct charge fails to state a claim.

## 2. Security classification

Plaintiff contends that he was kept in administrative segregation for ten months after the police investigation of his cellmate's death had ended and the prosecutor chose not to pursue criminal charges against him. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Confinement in administrative

segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although Plaintiff states that his placement in segregation has been "atypical and significant," he merely uses conclusory legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for ten months. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to allege any facts to suggest that his placement in segregation was "atypical and significant." Consequently, the Court concludes that Plaintiff has failed to allege sufficient facts to suggest that any liberty interest was implicated by his placement in segregation.

Plaintiff also contends that Defendants violated his procedural due process rights when they kept him in a level 5 unit even though his true security level was 2, and eventually increased

his security level to 5 without providing notice or a hearing. As noted above, the Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. For the same reasons that Plaintiff's placement in administrative segregation did not violate his procedural due process rights, Plaintiff's claims regarding his incarceration in a level 5 unit are properly dismissed.

**B.     Substantive Due Process**

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (citations omitted). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL

7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, Plaintiff disagreed with the issuance of the murder misconduct charge and his placement at level 5; however, Plaintiff's disagreement is insufficient to support a substantive due process claim. Plaintiff's allegations therefore fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive

protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in the major misconduct proceedings and in his security classification.

Accordingly, for all of the reasons set forth above, Plaintiff's substantive due process claim will be dismissed.

### C.      Conspiracy

Plaintiff's allegations also suggest that he believes that Defendants engaged in a civil conspiracy under Section 1983. A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred

over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Under these circumstances, Plaintiff fails to state a plausible claim of conspiracy.

### C.      Retaliation

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a retaliation claim, Plaintiff alleges that he filed grievances and other complaints regarding his confinement in administrative segregation and his

security classification. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Therefore, Plaintiff has sufficiently alleged that he engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

In *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the Sixth Circuit held that transfer to administrative segregation or to a unit in which there are increased restrictions and decreased privileges can be sufficient to constitute adverse action. Further, the issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). The Court concludes that Plaintiff has alleged facts which are sufficient to show that an adverse action was taken against him.

As to whether Defendants' conduct was motivated by a desire to retaliate against Plaintiff, the Court notes that it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

As set forth above, Plaintiff states that Defendant Williams wrote a homicide misconduct on Plaintiff on November 23, 2021, for the exact same charges that had been dropped by the

prosecutor in January of 2020. Plaintiff states that Defendant Barber had threatened to write such a misconduct on Plaintiff twice prior to it being written, and that Defendant Barber specifically told Plaintiff that he would receive this misconduct if he did not stop filing complaints on the Defendants about the refusal to reduce his custody level. The Court concludes that although Plaintiff's allegations regarding Defendant Williams's motive and Defendant Barber's involvement in the issuance of the misconduct ticket lack specificity, at this stage of the proceedings, the Court will not dismiss Plaintiff's retaliation claims against Defendants Williams and Barber.

Regarding the remaining Defendants, Plaintiff states that he filed grievances and notices of impending litigation on Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, and Naple in January and February of 2022. On March 8, 2022, Defendants Heinritz and Traylor changed Plaintiff's true security level to a level 5 and placed special designations on his classification without a hearing or written notice. Plaintiff filed a grievance regarding this on March 9, 2022, asserting that the action was retaliatory. Plaintiff filed a grievance on Defendant Washington on March 22, 2022, after he received information from an ICF hearing investigator showing that Defendant Washington instructed Defendant Williams to write the homicide misconduct on Plaintiff. However, as explained below, Plaintiff has failed to allege facts showing that Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor acted with a retaliatory motive.

While the facts alleged by Plaintiff suggest potential temporal proximity between some of the grievances filed by Plaintiff and his continued placement at level 5, Plaintiff also concedes that there was confusion regarding his true security level beginning in November of 2020, prior to him filing any grievances or complaints regarding the matter. (ECF No. 1, PageID.9.) Moreover, the

Court notes that it is undisputed that the Michigan State Police and the Montcalm County prosecutor's office investigated Plaintiff following his cellmate's death. Plaintiff apparently believes that the fact that the Michigan State Police and the county prosecutor's office did not ultimately pursue criminal charges against Plaintiff concluded the matter; however, Plaintiff has failed to allege any facts to suggest that Defendants were precluded from pursuing an internal murder misconduct charge at a later date or from placing him at level 5.

Plaintiff merely alleges the ultimate fact of retaliation as to Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor. He has not presented any facts whatsoever to support his conclusion that these Defendants retaliated against him because of his grievances and lawsuits. Accordingly, he fails to state a retaliation claim against Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### D.       State Law Claim

Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under Section 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.

19

*See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with regard to Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor. Accordingly, Plaintiff's state-law claims against Defendants Oversmith, Williams, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor will be dismissed without prejudice.

However, because Plaintiff continues to have a pending federal claim against Defendants Barber and Williams, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Barber and Williams.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Oversmith, Lynn Sandborn, Melissa Sandborn, Davids, Washington, Naple, Heinritz, and Traylor will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's procedural and substantive due process claims and his conspiracy claim against the Defendants Williams and Barber. Plaintiff's First Amendment retaliation and state law claims against Defendants Williams and Barber will remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 21, 2024                          /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                United States Magistrate Judge